IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., *et al*,

    Plaintiffs,

v.

MICHAEL J. LINDELL, *et al*,

    Defendants.

Civil Action No. 1:23-mc-00073

**DEPARTMENT OF JUSTICE'S OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL**

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

I.      The Underlying Litigation ................................................................................... 1

II.     The Instant Subpoena Matter .............................................................................. 2

LEGAL STANDARD............................................................................................................. 5

ARGUMENT .......................................................................................................................... 6

I.      Wells' Testimony Is Not Relevant to Any Claim or Defense in *Smartmatic*. .... 6

II.     Compelling Wells' Testimony Would Impose an Undue Burden on the United States. .................................................................................................................. 9

        A.     The requested testimony is cumulative of information in the public record. ....... 10

        B.     The requested testimony regarding Montgomery's history can be obtained more conveniently from Montgomery. ................................................. 11

        C.     The requested testimony implicates Executive Branch privileges. ...................... 12

CONCLUSION..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. FBI*,
   186 F.R.D. 188 (D.D.C. 1999) ............................................................................................... 13

*Alexander v. FBI*,
   192 F.R.D. 42 (D.D.C. 2000) ................................................................................................... 6

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund*,
   No. 1:21-mc-133, 2022 WL 3655277 (D.D.C. Aug. 25, 2022) .............................................. 10

*BuzzFeed, Inc. v. DOJ*,
   318 F. Supp. 3d 347 (D.D.C. 2018) ................................................................................ 5, 6, 9

*Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*,
   110 F. Supp. 3d 37 (D.D.C. 2015) ......................................................................................... 11

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
   407 F.3d 1220 (D.C. Cir. 2005) ............................................................................................. 11

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*,
   339 F.R.D. 334 (D.D.C. 2021) ..................................................................................... 5, 6, 9, 12

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
   34 F.3d 774 (9th Cir. 1994) ..................................................................................................... 9

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL–CIO–CLC*,
   103 F.3d 1007 (D.C. Cir. 1997) ............................................................................................... 6

*Freeman v. Seligson*,
   405 F.2d 1326 (D.C. Cir. 1968) ............................................................................................. 13

*Harrington v. Bergen Cnty.*,
   No. 14-cv-5764, 2017 WL 4387373 (D.N.J. Oct. 3, 2017) ..................................................... 9

*Herbert v. Lando*,
   441 U.S. 153 (1979) ................................................................................................................ 7

*In re Micron Tech., Inc. Sec. Litig.*,
   264 F.R.D. 7 (D.D.C. 2010) .................................................................................................... 6

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs ("In re Veterans Affairs")*,
   257 F.R.D. 12 (D.D.C. 2009) .............................................................................................. 6, 8

*In re Sealed Case*,
    494 F.3d 139 (D.C. Cir. 2007) .............................................................................................. 8

*Lewis v. Drug Enforcement Admin.*,
    777 F. Supp. 2d 151 (D.D.C. 2011) ..................................................................................... 11

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
    894 F.2d 1318 (Fed. Cir. 1990) ............................................................................................ 8

Order, *Montgomery v. eTreppid Technologies, Inc.*,
    No. 6-cv-56 (D. Nev. Aug. 4, 2023), ECF No. 1265 ..................................................... 8, 11

*St. John v. Napolitano*,
    274 F.R.D. 12 (D.D.C. 2011) ......................................................................................... 6, 13

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak, Co.*,
    276 F.R.D. 376 (D.D.C. 2011) ....................................................................................... 12, 13

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*,
    242 F.R.D. 1 (D.D.C. 2007) .................................................................................................. 6

*United States v. All Assets Held in Acct. No. XXXXXXXX*,
    No. 13-cv-1832, 2019 WL 95605 (D.D.C. Jan. 3, 2019) ................................................... 14

*Vire v. Entergy Operations, Inc.*,
    No. 4:15-cv-214, 2016 WL 10576707 (E.D. Ark. Sept. 28, 2016) .................................... 13

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) ............................................................................. 5, 6, 9, 10

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 9, 10

Fed. R. Evid. 803(8) ....................................................................................................................... 11

**INTRODUCTION**

These miscellaneous proceedings arise out of the defamation action *Smartmatic USA Corp. v. Michael J. Lindell*, No. 22-cv-98 (D. Minn.). In that action, Smartmatic USA Corp. and its related corporate entities (collectively, "Smartmatic") allege that Michael J. Lindell made defamatory statements regarding the use of Smartmatic's election technology in the 2020 presidential election. Although Department of Justice ("DOJ") attorney Carlotta Wells has no personal knowledge of any facts bearings on the truth or falsity of those statements, Lindell and his company, My Pillow, Inc. (collectively, "Movants"), have inexplicably subpoenaed Wells' testimony not about the facts or allegations in *Smartmatic* but about an unrelated seventeen-year old case, *Montgomery v. eTreppid Technologies, Inc.*, No. 6-cv-56 (D. Nev.), in which Wells represented the United States as trial counsel. The requested testimony purportedly concerns actions she took on behalf of the United States to protect its privileged information, including filing a motion for a protective order pursuant to the state-secrets privilege and attending hearings and depositions.

Setting aside that Movants' requested testimony is a matter of public record in court filings and transcripts, as even Movants concede, this testimony has no relevance to any plausible defense or claim in *Smartmatic*. Alternatively, Movants' request implicates privileged information to which they clearly are not entitled or information that is available from a more convenient source. Because this Court's determination appropriately considers the burden of discovery on a non-party, such as Wells, these grounds are sufficient to deny the instant motion.

**BACKGROUND**

I. **The Underlying Litigation**

This matter arises out of a third-party subpoena issued in *Smartmatic USA Corp. v. Michael J. Lindell*, No. 22-cv-98 (D. Minn.). In that case, Smartmatic sued Movants over Lindell's

1

allegedly defamatory statements regarding the use of Smartmatic's election technology in the 2020 presidential election.  *See* First Suppl. Compl. and Demand for Jury Trial ("Am. Compl."), *Smartmatic v. Lindell*, No. 22-cv-98 (D. Minn. April 7, 2023), ECF No. 125.

Smartmatic details a litany of Lindell's allegedly defamatory statements made across multiple platforms, including live rallies, radio and television appearances, a series of "documentary" videos, an online "Cyber Symposium," his social media website, and more.  *Id.* ¶¶ 75–83.  In particular, Smartmatic alleges that Lindell falsely stated: (1) that "Smartmatic technology, hardware, and software were widely used during the 2020 U.S. election," *id.* ¶¶ 145, 194; (2) that "Smartmatic had a corrupt relationship with [other election-technology companies] during the 2020 U.S. election," *id.* ¶ 151; (3) that "Smartmatic had stolen the 2020 U.S. election for Joe Biden and Kamala Harris," *id.* ¶ 158; (4) that "Smartmatic's election technology, hardware, and software were compromised by China and other countries or hacked during the 2020 U.S. election," *id.* ¶ 166; (5) that "Smartmatic's election machines were connected to the Internet during the 2020 U.S. election," *id.* ¶ 173; (6) that "Smartmatic was engaged in a widespread criminal conspiracy," *id.* ¶ 178; and (7) that "Smartmatic's election technology, hardware, and software were designed to steal elections," *id.* ¶ 184.  Smartmatic alleges that Lindell intentionally spread this false information in order to "sell pillows."  *Id.* ¶¶ 3, 7.

**II.     The Instant Subpoena Matter**

By letter dated March 20, 2023, Movants subpoenaed Wells, current Assistant Branch Director and former Senior Trial Counsel of the Federal Programs Branch in the Civil Division of DOJ.  *See* Ex. K ("Subpoena") to Decl. of Andrew D. Parker ("Parker Decl."), ECF No. 1-7 at 617, 641–44.  The subpoena inexplicably sought Wells' testimony concerning her representation of the United States in its assertion of the state-secrets privilege in an unrelated copyright

infringement lawsuit nearly two decades ago. *See Montgomery v. eTreppid Technologies, Inc.*, No. 6-cv-56 (D. Nev.).

The *eTreppid* lawsuit was initiated in 2006 as an ownership dispute between eTreppid Technologies, Inc. and its former employee, officer, and director Dennis Montgomery over certain software allegedly developed by him. *See* Compl., *eTreppid*, No. 6-cv-56 (D. Nev. Jan. 31, 2006), ECF No. 1. Montgomery subsequently also asserted claims against the Department of Defense ("DoD"), seeking a declaration that a classified information nondisclosure agreement he executed with a DoD agency did not preclude him from disclosing information allegedly necessary to his claims and defenses in *eTreppid*. *See* First Am. Compl., *eTreppid*, No. 6-cv-56 (D. Nev. Feb. 21, 2006), ECF No. 7 ¶¶ 68–74. The United States moved to dismiss those claims, which the court granted. Order, *eTreppid*, No. 6-cv-56 (D. Nev. May 24, 2007), ECF No. 177 at 6.[1]

While its motion to dismiss was pending, the United States moved for entry of a protective order, *see* Notice of Mot. & Mot. for P.O. by the U.S., *eTreppid*, No. 6-cv-56 (D. Nev. Sept. 25, 2006), ECF No. 83-1, which the court entered, *see* Protective Order, *eTreppid*, No. 6-cv-56 (D. Nev. Aug. 29, 2007), ECF No. 253 ("Protective Order"). The Protective Order prohibited "discovery or disclosure" of two narrow categories of information: (1) "the existence or non-existence of any actual or proposed relationship" between the parties and any U.S. intelligence agency and (2) any "actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties." *Id.* ¶¶ 1–3. The Protective Order expressly exempted from its coverage any discovery regarding "[t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by

---

[1] Montgomery, eTreppid Technologies, Inc., and related parties eventually settled, and the court dismissed the case with prejudice on February 19, 2009. Order, *eTreppid*, No. 6-cv-56 (D. Nev. Feb. 19, 2009), ECF No. 962 ¶¶ 1–2.

3

any of the Parties," *id.* ¶ 4(c), and any "actual or potential commercial or government applications of" this technology, so long as it did not relate to the aforementioned categories concerning U.S. intelligence agencies, *id.* ¶ 4(e).

Despite the passage of almost two decades and a lack of any connection between *eTreppid* and the 2020 election, Movants subpoenaed Wells in the instant matter purportedly to "provide information showing that Mr. Lindell's reliance on Mr. Montgomery and the information he stated he possessed was reasonable." Subpoena at 641. Pursuant to its *Touhy* regulations and the Federal Rules of Civil Procedure, DOJ declined to authorize Wells' testimony on numerous grounds, including relevance, privilege, burden, and lack of personal knowledge.

On July 28, 2023, Movants filed the instant motion to compel Wells' testimony. *See* Defs.' Mot. to Compel Compliance with Deposition Subpoena to Carlotta Wells, ECF No. 1; Defs.' Mem. in Support of Mot. to Compel Compliance with Deposition Subpoena to Carlotta Wells, ECF No. 1-1 ("Mem."). Movants moved to compel her testimony on the following topics:

[1.] Montgomery worked on U.S. government programs that involved information protected by the state secrets privilege;

[2.] The federal government undertook active measures to prevent Montgomery from disclosing state secrets;

[3.] Wells was tasked with monitoring Montgomery from 2006 through at least 2011 to prevent Montgomery from disclosing in court proceedings certain information related to his work for the federal government;

[4.] In 2008, Wells attended a deposition of Montgomery, bringing along two federal agents whose full names and specific employer she refused to identify, in order to prevent disclosure of any state secrets in Montgomery's testimony;

[5.] In 2010, the federal government seized boxes of documents related to Montgomery's work for the federal government from the office of Montgomery's attorney, and Wells reviewed those documents for state secrets, removing some documents to prevent disclosure of their contents;

4

[6.] Wells engaged in discussions with Montgomery on multiple occasions concerning the scope of the state secrets privilege and what information Montgomery was permitted to disclose or prohibited from disclosing;

[7.] Wells engaged in discussions with Montgomery in which she threatened that he would suffer negative consequences if he disclosed his work for the federal government;

[8.] The information known by Montgomery that Wells was tasked with protecting from at least 2006-2011 continues to be subject to the state secrets privilege today[; and]

[9.] Publicly available documents mentioning Wells accurately reflect what happened, or, if not, what is not accurate in those public documents.

Mem. 7–8.[2]

Movants admittedly seek Wells' testimony only to "confirm[] information that is already in the public record" about "Montgomery's work for the federal government," *id.* at 6, 9, which they contend will establish "the reasonability of Lindell's reliance on Montgomery's work" and "the accuracy of the statements made by Montgomery concerning the 2020 election." *Id.* at 6. The Court should deny their motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs disputes over third-party subpoenas to agencies in civil litigation. *See Watts v. SEC*, 482 F.3d 501, 503, 507 (D.C. Cir. 2007). Because Rule 45 incorporates the relevancy requirement of Federal Rule of Civil Procedure 26, "the Court must first consider 'whether the discovery sought is relevant to a party's claim or defense in the underlying litigation.'" *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 338 (D.D.C. 2021) (quoting *BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 356

---

[2] These topics differ slightly from the topics specified in Movants' "Touhy Summary of Information Sought and Relevance" submitted with their subpoena. *See* Subpoena at 644. Movants apparently have redefined the testimony sought for purposes of this motion.

5

(D.D.C. 2018)).  The party seeking the third-party discovery bears the burden of demonstrating its relevance to the underlying litigation.  *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007).

"Next, the court must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'"  *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 338 (quoting *BuzzFeed, Inc*, 318 F. Supp. 3d at 356); *accord Watts*, 482 F.3d at 508.  The resisting party bears the burden of "show[ing] that the documents requested are either unduly burdensome or privileged."  *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (citing *Alexander v. FBI*, 192 F.R.D. 42, 46 (D.D.C. 2000)).  However, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."  *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 339 (quoting *Watts*, 482 F.3d at 509).  And a court's obligation to avoid imposing undue burden is "particularly acute" when a third-party subpoena is directed toward the United States.  *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs* ("*In re Veterans Affairs*"), 257 F.R.D. 12, 18 (D.D.C. 2009).

## ARGUMENT

**I.     Wells' Testimony Is Not Relevant to Any Claim or Defense in *Smartmatic*.**

Wells has no personal knowledge of any facts relevant to the claims or defenses in *Smartmatic*.  The relevance standard is "not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."  *St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. Mar. 31, 2011) (quoting *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997)).  Indeed, the Supreme Court has emphasized that the relevancy

6

requirement "should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] 'a party or person from annoyance, embarrassment, oppression, or undue burden or expenses.'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (alteration in original) (citation omitted). This Court should not countenance Movants' inexplicable attempts to compel testimony from Wells concerning her representation of the United States as trial counsel in asserting and protecting an unrelated state-secrets privilege seventeen years ago.

By its own terms, the motion to compel does not seek any information bearing on the truth or reasonableness of the alleged defamatory statements in *Smartmatic*. And indeed, Wells has no personal knowledge—and Movant do not contend otherwise—of the truth or reasonableness of any of the alleged defamatory statements. In particular, Wells has no personal knowledge of whether "Smartmatic technology, hardware, and software were widely used during the 2020 U.S. election," Am. Compl. ¶¶ 145, 194; nor whether "Smartmatic had a corrupt relationship with [other election-technology companies] during the 2020 U.S. election," *id.* ¶ 151; nor whether "Smartmatic had stolen the 2020 U.S. election for Joe Biden and Kamala Harris," *id.* ¶ 158; nor whether "Smartmatic's election technology, hardware, and software were compromised by China and other countries or hacked during the 2020 U.S. election," *id.* ¶ 166; nor whether "Smartmatic's election machines were connected to the Internet during the 2020 U.S. election," *id.* ¶ 173; nor whether "Smartmatic was engaged in a widespread criminal conspiracy," *id.* ¶ 178; nor whether "Smartmatic's election technology, hardware, and software were designed to steal elections," *id.* ¶ 184. Wells' requested testimony is therefore irrelevant on its face.

Rather than argue that Wells' testimony has any bearing on the alleged defamatory statements themselves, Movants seek to compel testimony from Wells on the unfounded

speculation that details surrounding the United States' assertion of the state-secrets privilege seventeen years ago would legitimize Lindell's contemporary claims about the 2020 election. There is a "crucial distinction" between permitting discovery to "flesh out a pattern of facts already known" and "the illegitimacy of permitting discovery against a third party premised on an unfounded suspicion," as here. *In re Veterans Affairs*, 257 F.R.D. at 17 (citing *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990)). The United States' assertion of the state-secrets privilege in *eTreppid* has no bearing whatsoever on the issues in *Smartmatic*. *See In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (noting that when the state-secrets privilege is invoked, "[t]he result is simply that the evidence is unavailable, as though a witness had died" (citation and quotations omitted)). Movants accordingly cannot weaponize that assertion as a defense in unrelated defamation litigation nearly two decades later.

Indeed, this is not the first time Movants have attempted to resuscitate the long-dismissed *eTreppid* as allegedly necessary to their defenses in this action. Lindell and Montgomery each separately moved the *eTreppid* court to lift the Protective Order obtained by Wells on behalf of the United States. *See* Lindell's Mot. to Intervene and to Lift P.O., *eTreppid*, No. 6-cv-56 (D. Nev. Aug. 20, 2022), ECF No. 1216; Montgomery's Mot. to Restrict Application of the State Secrets Privilege, the P.O., & the Classified Info. Nondisclosure Agreement, *eTreppid*, No. 6-cv-56 (D. Nev. Nov. 14, 2022), ECF No. 1236 ("Montgomery's Mot. to Restrict"). But the *eTreppid* court denied both motions, explaining that any alleged connection between the Protective Order and Montgomery's "information" is "non-existent or tenuous at best," Order, *eTreppid*, No. 6-cv-56 (D. Nev. Aug. 4, 2023), ECF No. 1265 at 1, 5, and that the Protective Order is "unrelated" to the defamation litigation, *id.* at 2–3, 5. This Court should not countenance Movants' second attempt

8


at resuscitation here by compelling a third-party deposition of such clearly dubious relevance. Accordingly, their motion should be denied.

## II. Compelling Wells' Testimony Would Impose an Undue Burden on the United States.

The Court alternatively should deny Movants' motion because it imposes an undue burden on the United States pursuant to Rule 45. Preliminarily, the government has a "serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)). Wells is a current Assistant Branch Director within DOJ, and subjecting her to a deposition would improperly "commandeer[]" government resources. *See BuzzFeed, Inc.*, 318 F. Supp. 3d at 359 (collecting cases where courts rejected requests for testimony of current government employees as unduly burdensome).

The requested testimony also provides "slim chance of a 'likely benefit,'" *Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 340 (citing Fed. R. Civ. P. 26(b)(1)), given its irrelevance to the defenses in *Smartmatic*, as explained above, *see supra* § I. Any "speculative benefit" therefore does not outweigh "the burden to the parties and to the court's resources." *Harrington v. Bergen Cnty.*, No. 14-cv-5764, 2017 WL 4387373, at *2 (D.N.J. Oct. 3, 2017) (affirming denial of discovery "concerning an unrelated criminal investigation that occurred nearly nine years ago" on the basis of proportionality and undue burden).

That conclusion is alternatively reached upon consideration of the *Watts* factors:

> (1) whether the discovery sought is "unreasonably cumulative or duplicative"; (2) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and (3) whether the discovery sought is "proportional to the needs of the case[,]" taking into account "the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund*, No. 1:21-mc-133, 2022 WL 3655277, at *3 (D.D.C. Aug. 25, 2022) (citation omitted); *see also* Fed. R. Civ. P. 26(b)(1), (b)(2)(C); *accord Watts*, 482 F.3d at 509.  All three of these three factors weigh against Movants.

### A. The requested testimony is cumulative of information in the public record.

Movants' refined topics are already available in the public record. Movants themselves concede that Wells' testimony will "confirm[] information that is already in the public record." Mem. 8–9. In particular, Movants seek Wells' testimony that "[t]he federal government undertook active measures to prevent Montgomery from disclosing state secrets"; that she "was tasked with monitoring Montgomery from 2006 through at least 2011 to prevent Montgomery from disclosing in court proceedings certain information related to his work for the federal government"; that "[i]n 2008, Wells attended a deposition of Montgomery . . . in order to prevent disclosure of any state secrets in Montgomery's testimony"; and that "[p]ublicly available documents mentioning Wells accurately reflect what happened, or, if not, what is not accurate in those public documents." *Id*. at 7–8.

But the United States' unclassified filings entered on the public docket in *eTreppid* speak for themselves in establishing any "active measures" to protect the Federal Government's state secrets.  *See, e.g.*, Notice of Mot. & Mot. for P.O. by the U.S., *eTreppid*, No. 6-cv-56 (D. Nev. Sept. 25, 2006), ECF No. 83-1; U.S.'s Mot. for P.O., *eTreppid*, No. 6-cv-56 (D. Nev. Sept. 25, 2006), ECF No. 83-2 (including declaration from Director of National Intelligence asserting state-secrets privilege).  So too do the voluminous hearing and deposition transcripts already in Movants' possession.  *See, e.g.*, Ex. E to Parker Decl. (transcript of July 3, 2008 hearing filed in

10

*eTreppid*); Ex. F to Parker Decl. (transcript of July 8, 2008 hearing filed in *eTreppid*); Ex. G to Parker Decl. (transcript of Sept. 3, 2008 hearing filed in *eTreppid*); Ex. I (transcript of Jan. 14, 2011 video deposition filed in *In re: Dennis and Kathleen Montgomery*, No. 2:10-bk-18510-bb (Bankr. C.D. Cal.)); Ex. 13 to Ex. H to Parker Decl., ECF No. 1-6 at 44–47 (transcript of Nov. 18, 2010 deposition filed in *In re: Dennis and Kathleen Montgomery*).[3]

Courts may "take judicial notice of public records from other court proceedings." *Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)). Public records are also exempt from the rule against hearsay. *See* Fed. R. Evid. 803(8). Any attempt to compel such testimony already in the public record is therefore improperly cumulative. *See, e.g.*, *Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 42 (D.D.C. 2015) (granting motion to quash subpoena upon finding that all relevant documents were publicly available).

### B. The requested testimony regarding Montgomery's history can be obtained more conveniently from Montgomery.

To the extent that Movants seek non-privileged information regarding "Montgomery's work for the federal government," Mem. 6, such information is far more conveniently obtained from Montgomery himself. "Where potentially important legal rights are implicated by a subpoena and alternative sources are more convenient or less burdensome, those alternatives

---

[3] Indeed, the *eTreppid* court rejected as redundant Lindell's request for an order lifting the Protective Order to allow him to use information he allegedly obtained from Montgomery. Order, *eTreppid*, No. 6-cv-56 (D. Nev. Aug. 4, 2023), ECF No. 1265 at 2–3. The court explained that the "plain language" of the Protective Order already "clearly and unambiguously states that it only binds the parties in the *eTreppid* lawsuit and the proceedings in the *eTreppid* case," and thus "has no bearing on Lindell's ability to defend himself in an unrelated defamation lawsuit in another district." *Id.* at 3. The testimony requested of Wells is equally redundant and unrelated. To the extent Movants wish to establish that Montgomery was subject to a Protective Order in *eTreppid*, that information is already "clearly and unambiguously" established in the public record. *Id.*

should be explored first." *Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339 (cleaned up); *see also Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 385 (D.D.C. 2011) (quashing subpoena of former patent counsel because counsel was not the appropriate source of information regarding patent interview where respondent could instead depose the patent examiner and the patent inventor).

Montgomery is clearly a more convenient, less burdensome, and more logical source regarding his own history than Wells, whose only association with him was in connection with the United States' assertion of the states-secret privilege in *eTreppid*. Indeed, Movants have apparently already subpoenaed Montgomery at least in *US Dominion, Inc. v. My Pillow, Inc.*, No. 1:21-cv-445 (D.D.C.), a similar ongoing defamation action brought against Movants by a different election-technology company, *see* Montgomery's Mot. to Restrict, *eTreppid*, No. 6-cv-56 (D. Nev. Nov. 14, 2022), ECF No. 1236 at 3 (requesting the court lift the Protective Order to allow Montgomery to comply with subpoena from Movants issued in *US Dominion, Inc.*, and attaching subpoena as exhibit).

### C. The requested testimony implicates Executive Branch privileges.

The requested discovery is not proportional to the needs of the case because it implicates Executive Branch privileges. Despite Movants' assurance that they seek testimony only as to "public, non-secret matters," Mem. 7, Movants seek information covered by the *eTreppid* Protective Order. *Compare id*. at 7–8 (requesting Wells' testimony that "Montgomery worked on U.S. government programs that involved information protected by the state secrets privilege" and that "[t]he information known by Montgomery that Wells was tasked with protecting from at least 2006-2011 continues to be subject to the state secrets privilege today") *with* Protective Order ¶¶ 2–3 (protecting from discovery in *eTreppid* "the existence or non-existence of any actual or proposed relationship" between the *eTreppid* parties, including Montgomery, and any U.S. intelligence

12

agency, and any "actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties").

The requested deposition topics therefore could implicate Executive Branch privileges, belying Movants' claims to the contrary. *See* Mem. 7 (admitting that Movants seek testimony about Wells' "discussions with Montgomery . . . concerning the scope of the state secrets privilege and what information Montgomery was permitted to disclose or prohibited from disclosing"). This potentiality should be dispositive in the Rule 26 proportionality calculus when compared to the dubious relevance of the information sought.[4] *Cf. St. John v. Napolitano*, 274 F.R.D. 12, 17 (D.D.C. 2011) (deeming production of various medical records not proportional because of, *inter alia*, the "harm to the plaintiff's privacy interests from the disclosure"); *Vire v. Entergy Operations, Inc.*, No. 4:15-cv-214, 2016 WL 10576707, at *2 (E.D. Ark. Sept. 28, 2016) (balancing "the government's interest in confidentiality" against the plaintiff's need for certain "highly sensitive information" regarding nuclear power plants and finding "the need for confidentiality outweighs plaintiffs' need").

Moreover, any deposition would require Wells to engage in "painstaking" parsing of testimony to avoid disclosure of potentially privileged information, including, as relevant here, information protected by the state-secrets privilege, the attorney-client privilege, and the attorney work-product privilege. *See Sterne Kessler*, 276 F.R.D. at 385 ("Clearly a deposition of [counsel]

---

[4] When a discovery request calls for the production of potentially privileged information, a court may consider questions of relevance before reaching assertions of privilege. *See, e.g.*, *Alexander v. FBI*, 186 F.R.D. 188, 192 (D.D.C. 1999) (finding requested information to be irrelevant, rendering it unnecessary to reach issue of presidential communications privilege, which had been bifurcated for later consideration). Thus, "matters of privilege"—including formal assertion of privilege—"can appropriately be deferred . . . until after the production demand has been adequately bolstered by a general showing of relevance and good cause." *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968).

would require diligent efforts to avoid disclosure of [privileged information], a painstaking process that poses risks that other sources of discovery do not."). Indeed, "[t]o successfully walk the tightrope between what is discoverable and what is privileged, [Wells] would have to distinguish what [s]he affirmatively disclosed to third parties more than 17 years ago from [her] own mental impressions of the case." *United States v. All Assets Held in Acct. No. XXXXXXX*, No. 13-cv-1832, 2019 WL 95605, at *8 (D.D.C. Jan. 3, 2019).[5]

Accordingly, the three *Watts* factors necessitate denying the instant motion as unduly burdensome.

## CONCLUSION

For the foregoing reasons, the Court should deny Movants' motion to compel the testimony of Carlotta Wells.

Dated: August 25, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

/s/ *Cassandra Snyder*
CASSANDRA SNYDER, DC Bar #1671667
SAMUEL REBO, DC Bar #1780665
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Department of Justice*

---

[5] Although Movants emphasize the large amount in controversy in *Smartmatic*, that factor alone cannot overcome the weight of the grounds for denying the testimony.