UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SMARTMATIC USA CORP., et al.,**  **Plaintiffs,**  v.  **MY PILLOW INC., et al.,**  **Defendants.** | **Civil Action No.**  **1:23-mc-73-CKK-MAU**  [D. Minn. Case No. 22-cv-0098-WMWJFD] |

### REPORT AND RECOMMENDATION

My Pillow, Inc. and Michael Lindell ("Lindell"), Defendants in the underlying action in Minnesota, move to compel third party Carlotta Wells ("Wells") to comply with a deposition subpoena. ECF No. 1.[1] The United States, on behalf of Wells, opposes Lindell's Motion and contests the subpoena. ECF No. 7.[2] For the reasons set forth below, this Court recommends that Lindell's Motion be **DENIED**.[3]

---

[1] Lindell moved to compel Wells and John Negroponte to comply with deposition subpoenas in another election-related defamation lawsuit, *Dominion et al v. MyPillow et al*, pending in this Court. *See* Case No. 21-cv-445. The briefing on Lindell's Motion in this case is nearly identical to the briefing in the *Dominion* case. ECF Nos. 182; 190; 194 in D.D.C. 21-cv-445. This Court denied Lindell's Motions in the *Dominion* case for the same reasons it recommends that the District Court deny this Motion. ECF Nos. 218; 219 in 21-cv-445. Unless otherwise specified, the Court cites to docket entries in D.D.C. 23-mc-73 and page numbers in ECF headers.

[2] The Court also considered Lindell's Reply brief at ECF No. 10.

[3] The District Judge presiding over this case referred the Motion to this Court on September 1, 2023. 09/01/2023 Minute Order. Because resolution of this Motion would dispose of this case, the Court issues a Report and Recommendation pursuant to LCvR 72.3(a)(3).

1

## BACKGROUND

### Smartmatic Litigation

Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited ("Smartmatic") have sued Lindell for defamation and deceptive trade practices related to statements Lindell allegedly made regarding the 2020 U.S. presidential election. ECF No. 7 at 6 (citing Am. Compl., ECF No. 125 in D. Minn. Case No. 22-cv-0098). Smartmatic alleges that Lindell made defamatory statements across multiple platforms and falsely claimed that, through its voting machines, Smartmatic manipulated votes to steal the election. *Id*. According to Smartmatic, Lindell intentionally spread this false information to "sell pillows." *Id*.

### Information Lindell Allegedly Heard During the 2020 U.S. Election

Lindell defends against this suit, in part, by arguing his statements were true. ECF No. 1-2 at 1. He claims that he received information from other people, and then directly from Dennis Montgomery ("Montgomery"), that led him to make these statements. ECF No. 1-1 at 2 (referencing Lindell Decl. ¶¶ 2, 3). According to Lindell, Montgomery had provided computer programming services many years ago to the U.S. government through the contract Montgomery's company, eTreppid, had with the federal government. *Id*. Lindell claims he heard that "Montgomery had developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries." *Id*. Lindell further alleges that he "heard that Montgomery's election-manipulating software was obtained by persons in China, and that Montgomery obtained copies of internet transmissions showing the software was used by persons in China to change votes in the 2020 presidential election." *Id*. According to Lindell, his knowledge about Montgomery's "history of working for the United States government was one of the reasons [he] believed the information he

2

learned about Montgomery." *Id.* Lindell asserts that he reasonably relied on this information in making the statements Smartmatic claims are defamatory. ECF No. 10 at 4.

### eTreppid Litigation

In 2006, Montgomery sued eTreppid and his business partner over disputes they had about the company. ECF No. 7 at 6; *see generally* Compl. (ECF No. 1) in *Montgomery v. eTreppid Technologies, Inc.*, No. 3:06-cv-0056 (D. Nev.) ("*eTreppid* Litigation"). Montgomery brought claims including copyright infringement, breach of contract, breach of fiduciary duty, fraud and conversion. *Id.* Montgomery also asserted claims against the U.S. Department of Defense ("DOD"). ECF No. 7 at 6–7 (citing Am. Compl. in *eTreppid*, 6-cv-56; ECF No. 7 ¶¶ 68–74). Specifically, Montgomery sought declaratory relief that would have allowed him to disclose certain information in the *eTreppid* Litigation notwithstanding him having signed a classified information nondisclosure agreement with the DOD. *Id.* The court ultimately dismissed Montgomery's claims against the United States. *Id.* at 7.

While the United States' motion to dismiss was pending, it sought a protective order prohibiting disclosure of the existence of any relationship between the *eTreppid* Parties (which included Montgomery) and the U.S. government or any intelligence agency interest in or use of source code over which eTreppid claimed ownership. *Id.* (citing ECF No. 83-1 in *eTreppid*, 6-cv-56). The court granted the government's motion for protective order. *Id.* (citing ECF No. 253 in *eTreppid*, 6-cv-56).

### Wells

At the time Lindell filed his Motion, Wells was an Assistant Branch Director at the United States Department of Justice ("DOJ"). *Id.* at 6. She previously served as Senior Trial Counsel of the Federal Programs Branch in the Civil Division at DOJ. *Id.* Until the subpoena at issue, Wells

was not involved in the *Smartmatic* Litigation. None of the statements at issue in Smartmatic's Complaint reference Wells. *See generally* Am. Compl.

Wells was involved in the *eTreppid* Litigation on behalf of the United States. ECF Nos. 1; 7; 10. Wells signed the motion for protective order on behalf of the United States. ECF No. 1-1 at 3–4. Wells subsequently sought to enforce the protective order by ensuring Montgomery complied with it at various proceedings. *Id.* at 4–5. This included: Wells appearing at two hearings in 2008 and one hearing in 2011 in which Montgomery testified; being involved in the DOJ's "security review" of materials taken from Montgomery; and, according to Lindell, threatening Montgomery with treason charges if he violated the protective order. *Id.* Many of these alleged interactions are based on declarations that Montgomery himself filed in various proceedings. *Id.*

### The Subpoena at Issue

On March 20, 2023, Lindell subpoenaed Wells to provide testimony in the *Smartmatic* Litigation. ECF No. 1-7 at 618. Among other things, Lindell seeks testimony from Wells that:

> (1) Mr. Montgomery worked on U.S. government programs that involved information protected by the State Secrets Privilege;
> (2) the federal government undertook active measures to prevent Mr. Montgomery from disclosing state secrets, including seizing documents from his attorney, attending his deposition, and attending court hearings at which he testified;
> (3) Ms. Wells engaged in conversations with Mr. Montgomery on multiple occasions regarding the State Secrets Privilege and what information Mr. Montgomery was permitted to disclose or prohibited from disclosing; and
> (4) the United States Government's desire to protect State Secret information held by Mr. Montgomery continues today.

*Id.* at 644.

The United States objected based on DOJ's *Touhy* regulations, asserting that: (1) the testimony sought is neither relevant nor proportional to the needs of this case; (2) the testimony is not authorized to the extent it seeks information subject to a protective order in the *eTreppid* Litigation; (3) Wells lacks personal information about the testimony sought and there is a more

4

convenient source; and (4) the testimony is not authorized to the extent it seeks privileged information. *Id.* at 855–59. Lindell filed this Motion to Compel on July 28, 2023. ECF No. 1.

## LEGAL STANDARD

Rule 45 governs third party subpoenas. Fed. R. Civ. P. 45. When a third party lodges timely objections to a subpoena, the serving party "may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B). When considering a motion to compel under Rule 45, a court "must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined by Rule 26(b)(1)." *See BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018); *Hesco Bastion Ltd. v. Greenburg Traurig LLP*, Case No. 09-cv-0357, 2009 WL 5216932, *3 (D.D.C. Dec. 23, 2009) ("No requirement of relevance is included in the text of Rule 45; however, it is settled that a subpoena is limited in scope by Rule 26(b)(1)."). The serving party bears the burden to establish relevance. *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007). If relevance is established, the Court considers objections to the subpoena under Rule 45, including whether the subpoena requests privileged material or would cause an undue burden on the third party. *See Buzzfeed*, 318 F. Supp. at 356. It falls on the objecting party to show that compliance would pose an undue burden. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

Federal Rule of Civil Procedure 26(b) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Pursuant to the 2015 amendments to Rule 26, discovery must be both relevant and

proportional based on a number of enumerated factors.[4]  This Court has recognized that "relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).[5]  That said, "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Alexander v. F.B.I.*, 186 F.R.D. 12, 19 (D.D.C. 1998) (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)) (alteration in original).

In addition to Rule 26's relevance requirement, a court considering a motion to compel under Rule 45 must deny a motion if the subpoena "call[s] for privileged matter or would cause an undue burden." *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007).  According to Rule 26(b), whether discovery poses an undue burden depends on whether the discovery is "unreasonably cumulative or duplicative"; "obtainable from another source that is more convenient, less burdensome, or less expensive"; and whether the "burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of

---

[4] This includes: "(1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the importance of the discovery in resolving the issues; and (5) whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed R. Civ. P. 26(b)(2).

[5] As the Advisory Committee noted, "[t]he change does not place on the party seeking discovery the burden of addressing all proportionality consideration" and "the parties' responsibilities would remain" as they had been prior to the 2015 amendment.  Fed. R. Civ. P. 26 Advisory Committee Note; *see also Goodwin v. District of Columbia*, Case No. 21-cv-806, 2021 WL 1978795 (D.D.C. May 18, 2021) (citing Fed. R. Evid. 401) ("Yet, information may qualify as relevant . . . if it has 'any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'").

the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1)–(2); *see also Watts*, 482 F.3d at 509.

Federal agencies have authority to enact regulations for responding to a subpoena served on a federal official. 5 U.S.C. § 301; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (upholding the Attorney General's authority to "prescribe regulations not inconsistent with law for the custody, use, and preservation of the records, papers, and property pertaining to the Department of Justice"); *see e.g.*, *Agility Public Warehousing Company K.S.C.P. v. U.S. Department of Defense*, 246 F. Supp. 3d 34, 41 (D.D.C. 2017) (describing agency authority to enact *Touhy* regulations).[6] Although an agency's *Touhy* regulations are relevant for an agency to determine how to respond to a subpoena, those regulations do not "alter the procedures set forth in the Federal Rules of Civil Procedure or . . . preclude the production of documents 'that are relevant to a judicial proceeding.'" *S.E.C. v. Selden*, 484 F. Supp. 2d 105, 107 (D.D.C. 2007) (*citing Touhy*, 340 U.S. at 468). Rules 45 and 26 give reviewing courts the "tools . . . [to] adequately protect both the litigant's right to evidence and the 'government's interest in not being used as a speakers' bureau for private litigants.'" *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

## DISCUSSION

### I.     Lindell Fails to Show the Testimony is Relevant

Lindell argues that the testimony he seeks from Wells is relevant because "information concerning Montgomery's past and his work for the federal government is important to Lindell's

---

[6]     As opposed to state court litigants, federal court litigants "can seek to obtain the production of documents from a federal agency by means of a federal subpoena." *Houston Business J., Inc. v. Office of the Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996).

defenses in this action." ECF No. 1-1 at 2.  Specifically, Lindell argues that he "anticipate[s] that a central issue [of this case] will be the reasonability/plausibility/inherent improbability of the information on which [he] relied when making the allegedly defamatory statements." *Id.* at 10. Lindell claims the testimony he seeks from Wells will corroborate the information upon which Lindell relied when he made the statements at issue in Smartmatic's Complaint.  *Id.* at 11.

Lindell argues that he does not merely seek privileged or confidential information, but rather seeks testimony that goes beyond Wells' role in asserting the state secrets privilege in the *eTreppid* Litigation.  ECF Nos. 1-1 at 9–11; 10 at 2–4.  Lindell lists examples of Wells interacting with Montgomery from approximately 2006 through 2011.  ECF No. 10 at 2.  All of these alleged interactions, however, still relate to the protective order the United States obtained in the *eTreppid* Litigation and the government's enforcement of this order.  *Id.*  Lindell also asserts that the Wells subpoena is necessary because Smartmatic may object to evidence regarding Montgomery at trial. ECF No. 1-1 at 9.

The United States argues that Lindell's subpoena to Wells is "irrelevant on its face" as Lindell does not seek to compel any information bearing on the truth or reasonableness of the actual alleged defamatory statements in this case.  ECF No. 7 at 11.  According to the United States, Lindell does not assert that Wells has any personal knowledge of the "truth or reasonableness of any of the alleged defamatory statements." *Id.* at 12.  The United States argues that the Court should draw the "'crucial distinction' [here] between permitting discovery to 'flesh out a pattern of facts already known' and 'the illegitimacy of permitting discovery against a third party premised on an unfounded suspicion' as here." *Id.* (quoting *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 17 (D.D.C. 2009)). As such, the United States argues that the requested discovery would delve into "the shadow zones

of relevancy and . . . explore matter which does not presently appear germane on a theory that it may conceivably become so." *Id.* at 10 (citing *St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. Mar. 31, 2011)).

The Court agrees with the United States. The testimony that Lindell seeks from Wells is not relevant to a claim or defense in the *Smartmatic* Litigation. First, as Lindell does not dispute, Wells does not have any personal or direct knowledge regarding the allegedly defamatory statements at issue. At most, because Lindell claims that he made his statements about Smartmatic in part based on what he "heard" from and about Montgomery related to Montgomery's work with the U.S. Government, the only potential knowledge that Wells possesses is information from almost twenty years ago about Montgomery's work with the U.S. Government in an unrelated matter. ECF No. 1-1. This information would, according to Lindell, corroborate or help make his reliance on information he heard from and about Montgomery more reasonable. Setting aside the fact that Wells' role in this case is attenuated at best, a central problem with Lindell's theory is that he does not claim that he actually relied on the information he now seeks back when he made statements about Smartmatic during the 2020 U.S. election.

Put another way, testimony from Wells about why the United States sought and enforced a protective order in unrelated litigation almost 20 years ago is irrelevant to this case because it is not the actual basis for Lindell's statements about Smartmatic vis-à-vis the 2020 election. That Lindell did not seek to verify the information he "received" and "heard" about Montgomery's work with the U.S. Government when making his statements related to the 2020 U.S. election does not now make that information relevant. *See, e.g.*, *Alexander*, 186 F.R.D. at 20 (finding irrelevant discovery requests for information related to the White House recording system that went beyond how individuals may have been able to enter the White House to probing "technical and

9

operational subject matter and capabilities of White House security."). Nor does Lindell provide any authority for the proposition that he can rely on information discovered years *after* he made the statements to justify whether his conduct was "reasonable" under the circumstances as they existed at the time he made the statements. In sum, Lindell has failed to establish the requested discovery is relevant to any claim or defense.

## II. The Deposition Subpoena Imposes an Undue Burden on Wells

Even assuming the information Lindell seeks to compel were relevant, the United States has shown that the subpoena would pose an undue burden and should, therefore, be quashed.

The United States argues that the possible benefit of Wells' testimony to Lindell's case is highly speculative and is strongly outweighed by the burden of providing such testimony; the testimony would be cumulative of information already on the public record; would duplicate any testimony from Montgomery; and can be obtained much more conveniently from Montgomery himself. ECF No. 7 at 12–16. Additionally, the United States argues that compelling Wells, a high-level DOJ official, to testify in this matter would improperly commandeer government resources. *Id.* Finally, the United States objects to the subpoena to the extent it would require Wells to testify about information protected by executive privilege, the state secrets privilege, attorney-client privilege, and the attorney work product protection. *Id.* at 16–18. The United States argues that, despite Lindell's assurances that the subpoena does not seek privileged information, many of the topics Lindell outlined in the subpoena go to the very heart of information that the federal court protected in the *eTreppid* protective order. *Id.*; ECF No. 1-7 at 855 (pointing out that Lindell seeks testimony including "(1) Mr. Montgomery worked on U.S. Government programs that involved information protected by the State Secrets Privilege; (3) Ms. Wells engaged in conversations with Mr. Montgomery on multiple occasions regarding the State Secrets

10

Privilege and what information Mr. Montgomery was permitted to disclose or prohibited from disclosing; (4) the United States Government's desire to protect State Secret information held by Mr. Montgomery continues today.").

Lindell makes a number of arguments in opposition. He claims that the subpoena would not pose an undue burden because the discovery sought is proportional to the needs of the case; Wells has personal knowledge of the issues; and there is no more convenient source to obtain the information. ECF No. 1-1 at 6–13. According to Lindell, this deposition is proportional because it is a "single deposition" and "the stakes of the case are high." *Id.* at 10. Lindell points out that Smartmatic seeks $2 billion in damages in the underlying case. *Id.* Lindell asserts that Wells' response to his subpoena confirms she has knowledge about the topics in the subpoena. *Id.* at 12. He further argues that there is no better source to testify about Wells' actions in the *eTreppid* Litigation besides herself. *Id.* at 12–13. Additionally, Lindell argues that, because the United States previously took the position that the *eTreppid* protective order was irrelevant to the *Smartmatic* Litigation, the government can no longer object to the subpoena on the grounds that seeks privileged information. *Id.* at 12.

The United States has met its burden to show that compliance with the subpoena would pose an undue burden on Wells. As noted above, the information upon which Lindell relied to make his statements during the 2020 U.S. election is known to Lindell and was known to Lindell at the time of the 2020 U.S. election. To the extent anything Lindell heard from or about individuals including Montgomery is relevant to the determination of whether Lindell's statements were reasonable, any relevant testimony would be from Montgomery and the other individuals who provided information about Montgomery to Lindell—not U.S. Government officials who were involved in the unrelated *eTreppid* Litigation nearly two decades ago. *See Watts*, 482 F.3d

11

at 509 ("[D]iscovery under Rules 26 and 45 must properly accommodate the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.") (internal citations omitted). Therefore, Montgomery and the other sources of the information, not Wells, are the most convenient source for this information. In fact, Lindell has access to and has already elicited statements from Montgomery about his alleged work for the U.S. Government many years ago. ECF Nos. 1-2 (Lindell Decl.); 1-7 at 3–9 (Montgomery 08/19/2022 Decl.); 1-1 at 2–5 (referencing other testimony from Montgomery in 2008, 2011, and 2015 attached as exhibits to Lindell's Motion).

Moreover, because Lindell asserts that he only seeks non-privileged and public information from Wells, any testimony she provides would unnecessarily duplicate the information on which Lindell actually relied to make statements about Smartmatic during the election.[7] Necessarily, the value that Lindell placed on information he gained from and about Montgomery and any alleged work Montgomery did with the U.S. Government depended on information Lindell learned from sources other than Wells. That, alone, provides the benchmark against which the reasonableness of his reliance and statements should be measured, not any post-hoc information Lindell may seek from Wells to now bolster or corroborate his reliance many years ago. Accordingly, the testimony Lindell seeks simply does not warrant the undue burden on a government official to sit for a deposition about unrelated litigation from 2006 which implicates privileged information, including information potentially subject to the state secrets privilege.

---

[7] Because Lindell repeatedly assures that he only seeks *non-privileged* information, and because the Court concludes that the testimony Lindell seeks is irrelevant and poses an undue burden, the Court does not separately reach the question of whether such testimony would be shielded by privilege. ECF No. 10 at 14.

## CONCLUSION

For the reasons set forth above, the Court recommends that Lindell's Motion to Compel testimony from third party Wells be **DENIED**.

## REVIEW BY THE DISTRICT COURT

The parties are advised that under the provisions of Local Civil Rule 72.3(b), any party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within 14 days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this Report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date: August 22, 2024

                                              MOXILA A. UPADHYAYA
                                              United States Magistrate Judge